Please all rise. Hear ye, hear ye, hear ye. This Honourable Appellate Court for the 2nd British District is now back in session, pursuant to adjournment. Please be seated. Your Honour, this case is about the 2-15-1092 The people of the State of Illinois have since this afternoon v. One 2006 Mercedes-Benz defended property to the people of the State of Illinois. Plaintiff Appellate v. Fleming Provenance Plaintiff Appellate Arguing on the behalf of the Attorney Mr. Cheryl L. Moore Arguing on behalf of the Appellate Mr. Sean Kinsella Ms. Moore? Good morning, Your Honour. Good morning. May I ask a question? Yes, please. I would ask the Court's indulgence and forgiveness. I don't know that I've done oral arguments probably since law school other than one quick trip to the Illinois Supreme Court a long time ago. So first of all, I'd like to thank you for granting the oral arguments today on this case. And I will tell you, it was kind of a scurry and flurry of activity to get ready for today. We got our notice last week and then, as you know, the weekend was a little nutty. And I was frankly a little bit surprised and happy that you are entertaining arguments on this case today. The surprise mostly came from the fact that, you know, obviously it's a vehicle forfeiture case, and I've been doing appellate work for some 17 years or so, and I've yet to capture the Court's attention or interest or something to merit oral arguments. Well, if you're coming back, and we certainly welcome you back, we have told the Appellate Lawyers Association, when you ask for oral argument, which you did, don't be surprised if you get it. So keep that in mind. Thank you very much. It's been a long time coming, and I'm happy to be here. So as I was going through my materials for today, I kind of discerned what I think are maybe the two sailing issues that the Court may be interested in. I don't purport to have your legal acuity or your mindset, but in terms of my picking through the record and the briefs itself, it seems to me that the two primary issues really come down to, first of all, whether or not the Court misapprehended his ability to exercise discretion and grant the return of the vehicle to Mr. Cronert. And then secondly, and along with attendance to that, is the interpretation of the language of the statute that talks about whether he had knowledge or reason to know. And I think, interestingly, in most of the case law, or all of the case law that I was able to go through, there really isn't a parsing out of what that language, knowledge, or reason to know, what that actually means for us. Many of the opinions discuss knew or should have known, which is, I think, the standard that Judge Diamond applied, that he thinks, well, there's enough here that he knew or should have known that his grandson would use the car at a time when Grandpa was distracted or at the hospital taking care of his wife after her illness or during that period of illness. So are you suggesting that reason to know is not the same as should have known? I am suggesting. Is it a lesser standard or a greater standard? I think reason to know implies a greater standard that you have to show actual or constructive knowledge. I think knowledge is actual knowledge. Reason to know is actual constructive knowledge. But there is no case law you've unearthed that specifically defines those distinctions. Correct. And I think, you know, I was thinking about this, and I think in the business of litigation, well, legislation, litigation, and adjudication, as lawyers and certainly as judges and justices, you know, we are marked by the words that we use. And the way that we use words, whether it's in drafting legislation or in crafting an opinion, are of the utmost importance in terms of the precedents that we set and how litigators are going to rely upon what we actually put out there in terms of our published opinions and our precedents that are to be relied upon. But I think you're saying constructive knowledge. That's what you think. Reason to know means constructive knowledge. I think that's the argument that I'm making. Okay. And what does constructive knowledge mean? That he is aware of facts from which he can, I guess, connect the dots, that he would know, be expected to then know, having reason to know. In this particular case, Mr. Croner's testimony was essentially, and I'm going to paraphrase it, that he had purchased the car as a co-owner with his grandson about six weeks prior to, six or seven weeks in November of 2014. The car was being seized then in January of 2015. That his grandson had lived with him for a period of time from 2004. He knew the grandson didn't have a license. The grandson was engaged in efforts to reobtain his driver's license. So he bought the car. He admittedly knew that his grandson didn't have a license. At that time, correct. And what his testimony was, was that he was expected to get the license back within about a month or so. And I think it's interesting to note that at the time the officer stopped the grandson, he produced a facially valid driver's license to the police officer. I don't know where he got it. It's just sort of left hanging out there in the record in terms of the testimony that was elicited from the police officer. Well, that's sort of a red herring because the claimant, the grandfather, admitted he knew he didn't have a license. So whether he had a facially valid license wouldn't be a defense here. I think he admitted that at the time the car was purchased, he knew he didn't have a valid license. But he was in the process to get his license back. And what he said was, at the time the car was purchased, it was expected that he was going to get his license within about a month or so through whatever hearing process he thought was necessary. So how does his facially valid license bear on the grandfather's knowledge? Well, the grandfather didn't. There was no testimony the grandfather saw. I just think that that's an interesting fact. And that was something that the state had elicited in their testimony with the officer. That's a red herring. And I don't necessarily disagree with you. But the point being that, you know, even the officer, when he makes the first step, the traffic stop to begin with, doesn't know for sure if this guy has a valid license or not. So when we talk about what is the grandfather's scope of knowledge or what should he know, what does he know, what does he have reason to know, and what should he reasonably know? Grandpa says that around December 27th, his wife had stroke-like symptoms, was admitted to the hospital, and that he was essentially in the hospital with her every single day and not home. Prior to that, he said that he and his grandson worked at the same office facility in Warrenville, that as a regular course of their day-to-day activities, going to work, he would drive his grandson to work. He believes that in the course of those weeks over the holiday, his grandson was off of work and may have been on call. That doesn't necessarily require that he's going to need transportation to and from the office every day. So while Grandpa is distracted at the hospital with his wife, tending to her needs or trying to figure out what her medical condition is, for whatever reason, grandson takes the car and drives as a substitute for traffic stop based on the tinted windows on the vehicle. There's nothing in that set of facts that we have before us on this record that suggests that Grandpa at the hospital had any knowledge that his grandson was going to be going anywhere at any point in time, that he needed transportation. I think you can make a strong argument that that would be the case. I guess one of the things I wanted to ask you about, maybe it's minor, but as I understand it, the insurance was only in the son's, the driver's name, correct? Well, that's what the card said. I don't know what the policy said. I think the record is silent on that. All right. Okay. The card says that why would you be spending money for insurance on a car you don't drive? What's the logic in that? Again, you have to go back to this testimony from the grandfather that said he was in the process to get his license reinstated. But in a month or two, you're still paying. At the time that you take out insurance in the grandson's name, he doesn't have a license. That's not in dispute. The grandfather knew it. The car needs to be insured. So I don't know what that is. Why do you have him insured? Pardon me? Why is he insured if nobody's driving? Well, Mr. Croner testified that he had driven the car at least four or five occasions that it was used as a family vehicle. So, you know, the grandson, I mean, by the person who contacted the insurance agency and said, we need to get insurance on this. And, you know, this isn't part of the record, but, you know, if we're going to kind of spend ideas of what may have been going on here, in order to get his license reinstated from the Secretary of State, he's going to have to show an insurance policy. So if he's in that process, that's something that he would do. He would have to show that he wanted it. Well, why not have it in both names? I mean, I guess I'm hung up on why is it solely in the person's name who doesn't have a license? And I can't answer that. All I can tell you, you know, I know from my personal experience, when you get insurance on a car, everybody in the household is insured on the car, unless they're accepted specifically. If you've got a high-risk driver, the state firm says, hey, we're going to insure everybody in that family, but not Joe Saban. Right, but if you're a husband and wife, you'd have both names. You wouldn't have it in your child's name only if you buy the car. Wouldn't you normally? Well, I don't know. I mean, I just got married. My husband's name is on the license. We don't want to get hung up on that. Let's not get hung up on that. So, you know, the bottom line being is that, you know, I think Your Honor touched on very important points that, you know, I think what you said was I think you can make a compelling argument that as of the date that the actions that gave rise to the forfeiture took place, did Mr. Croner have knowledge, actual or constructed, or should he even have known? I mean, even if you go to that standard, on that date, there is absolutely no evidence in the record before you or before Judge Diamond in the lower court that suggested that Mr. Croner had any actual knowledge that day. Well, he didn't need actual knowledge. Should have known is obviously not actual knowledge, but let's not blend the two. Let me ask you this. Is there any evidence in the record of testimony as to how the grandson got the keys? Is there evidence that he normally had access to the keys? Or how did he get the keys that day? To my recollection, the record does not go down that. What Mr. Croner had testified to was that they had an agreement that he was not to drive the car until he was all straightened out with the Secretary of State. And there's no evidence in the record that suggests that he did drive the car at any point in time other than that day. But there's no evidence in the record to show that he abided by that agreement either, right? In other words, the grandfather's position is, on his honor, he was not supposed to drive. But we don't know where the keys are. We don't know if he's ever driven this before. We don't really know a lot. Well, and frankly, I fault the state for not flushing those things out. And I think the officer, when he testified, he never asked. He never went and interviewed Mr. Croner, who was clearly another owner of the vehicle. He said when he ran the plate that two registered owners came up. He never went and spoke. There was no investigation conducted at all in terms of what Mr. Croner's knowledge was or wasn't. So, unfortunately, we're left right now with a record where there are a lot of question marks about, well, you know, did Grandpa keep the keys locked up? Did he keep them in a safe box? I don't know. I don't know. It seems to me, from my very reading of the record, I wasn't a party to this trial either. So I'm looking at it bold, as I believe Mr. Kinsella is and as I believe your honors are. You know, we're stuck with the record that we have. And ultimately, you know, as you know, forfeiture is a, it's a, forfeitures are generally frowned upon. We want to avoid them where we can and impose, obviously, enforce the law as it should be enforced. In a case like this, with this record, I would submit that it is against the manifest way of the evidence because of all these various holes that you're citing. The manifest way of the evidence is a fairly high hurdle. As you know, it's defined as it's against the manifest way of the evidence. In other words, the trial judge's decision is wrong only where an opposite conclusion is clearly apparent. That is the phrase. That's clearly apparent. That's a pretty high hurdle, clearly apparent, isn't it? Like, in other words, a trial judge, you're obviously wrong. And I agree with you on it. So that's where we get back to this. Maybe it's splitting hairs in terms of what is the knowledge requirement. But there is nothing in this record to show that Mr. Cronert had any knowledge. Other than all of these circumstances that clearly weigh against that argument. The insurance. He's got the keys. He pays for repairs on the car. He doesn't drive. And I understood that the grandson paid for the repairs out of his own pocket, right? On a car he's not driving. I don't recall that. I remember the down payment, I was making the payments on the car. Claimant apparently drove to the dealership when Longston paid for repairs with his own credit card. Again, can't the judge infer, you know, why would you be paying for a car you don't drive? Because he was expected to be taking ownership of the vehicle. And that's, again, that goes back to what Grandpa testified to. And I don't know off the top of my head if his license was reinstated shortly thereafter or not. I don't recall that, if that was ever brought out in the record. But the testimony that was before the court was that we went and bought this car in anticipation of his license being reinstated within about a month or so. That was what Mr. Cronin's testimony was. Well, the early argument, and we get into this because, again, when you're talking about anything to do with knowledge, reason to know, intent, you never know what a person knows directly at the time. You have to infer it from the surrounding circumstances and evidence. If we took your position out to a side of conclusions, a claimant would merely have to say, hey, I didn't know. I told him not to drive. I went and discussed it. It doesn't matter about these other circumstances. They are irrelevant. You can't show exactly that I'm telling you that I'm not telling you the truth. And that would be it, right? Not necessarily. I think the state has to show some knowledge. And you can show all kinds of circumstances that may have enabled the grandson to have access to the car. That doesn't mean that he acquiesced. That doesn't mean that he gave permission. And that doesn't mean that on the date in question, when he was at the hospital, attending to his sick wife, not knowing what is correct. But you said give permission. That's not an issue here. It's just whether he had constructive knowledge that the grandson was driving the car anyway. Correct. Now, he knows up until December 26th, let's say, that the grandson is still revoked. Because he's, well, he's driving him to work up until the 27th. He did say that. Okay. After the 27th, he wasn't home but thought the grandson was on vacation. So he knows he's revoked up until that time. Correct. I mean, at some point, you just can't be Pollyanna and put blinders on and say, Oh, I told him not to drive the car. Therefore, he must not be driving the car. What other circumstance would a court look to? I think then what you're suggesting is that we have to read additional language into the statute regarding innocent ownership. And essentially, there would then be no set of facts unless, you know, you can establish that the person driving the car actually stole it. You know, Grandpa's got to put the keys in a lockbox and say, You can't drive the car under any circumstance whatsoever. I will put it in a lockbox. No, you wouldn't normally have. These are very unusual circumstances in my opinion. You put a car in the name of somebody who doesn't have a license. He's paying for repairs on a car he doesn't own. His name is on the insurance, but he doesn't have a license. You know, if this was a case in which all of this stuff happened, the same facts happened, but none of those other things I just mentioned, I think you'd win, clearly. I don't even think you'd be here because the grandfather would say, Hey, you know, I own this car. You know, yeah, the keys are in there, but I didn't tell him to drive. I didn't know he was going to drive. You take out the insurance. You take out the title. You take out the repairs. It's a different case, totally. Again, I don't disagree with you, but hindsight is 20-20. So would they have done it differently? Would they have said, Let's wait until your license is valid before we even go buy a car? Probably that would have been the smarter thing to do. Again, you can't look at these things in a vacuum. These are family decisions. The record is sound in terms of why they made these decisions or why they proceeded in this fashion. All we know is he was expected to get his license back within a certain period of time. Obtaining the insurance, I think, is consistent with that. How old was the grandson, by the way? Does the record establish his age? I don't know if it establishes his age. I think he was probably around about 30-ish, late 20s or early 30s, something to that effect. Grandpa testified that his grandson had been living with him since 2004. The motion to reconsider has a passage that says that Mr. Cronin credibly testified to this, that, and the other thing. The trial court, in considering that motion, uses a phrase that often relates to something less than just what it says. I just think that the totality of the circumstances suggests that there was reason for the grandfather to know that the vehicle would be used in this fashion. Isn't it possible that the trial court there is saying, I did not believe Mr. Cronin because of these other circumstances, and therefore, you know, he said he drove him to work, but we don't have anybody else who knows that. He said he told him not to drive it. We don't know anybody else. And if he wanted it to be a family car, he apparently had a granddaughter that drove it and a wife that drove it, and she certainly wasn't going to be called if she had been ill to testify. But there are lots of other people he could have bought that car with. So isn't it, I mean, the very simple answer to this question may be that the trial court didn't believe him. But he doesn't have to say that. He just has to say the totality of the circumstances. Well, I think that then puts the parties at a disadvantage, certainly, when you're going before the court. And I think there was at one point at least when trial counsel attempted to get a little bit of clarification from the court in terms of what was he basing his ruling on. And so we are, I think, at a complete disadvantage. You know, I can't guess as to what Judge Diamond was thinking, and certainly it's possible that that's what he thought. But, again, it gets back to we have to be cautious about the words that we use. So if, you know, hey, I didn't really find Mr. Conner credible under these circumstances, and here's why. Because the insurance card was in this name and because of X, Y, and Z. And if he had said that, well, then we don't even file an appeal in this case. But, unfortunately, we have a record that has a number of holes in it with respect to the investigation that was conducted by the state in terms of what are they doing to negate any type of innocent owner defense. And we have somebody who is clearly an owner of the vehicle, and that was conceded by the state at one point in the course of the arguments, clearly an owner of the vehicle. And on that date and time in question, there is no direct evidence, and I would submit to the court that there is no constructive evidence before the court that would suggest that he had constructive knowledge, actual knowledge, on that day at that time. And we can all find that, well, gee, maybe his grandson was driving the car willy-nilly all the time, and Grandpa just didn't say that. But, again, there's no evidence of that. So, you know, I think to say that the state wins a forfeiture on these facts with this many questions remaining in terms of the actual knowledge, the constructive knowledge. Maybe Grandpa should have known. Maybe he should have been more mindful about the car when his wife was in the hospital with a stroke and apparently a serious illness because she was there for at least seven or eight days. You know, there are any number of things that factor into the way that human nature is and how our minds work and what are first and foremost in our priorities. Mr. Carr, I think decision-making, maybe in retrospect, he would have done things differently in terms of this, but he is an owner. He has an interest, and this record is devoid of anything that shows actual or constructive knowledge that on that day he knew or should have known that his grandson was going to take the car out and drive it for any purpose. And so my time is up, and I will leave it at that. Thank you very much. You have time for a response if you choose. Thank you. Mr. Kinsella. May it please the Court, Counsel. I would just like to talk briefly about the two points that I believe support the trial court's decision in forfeiting the vehicle. Specifically, the first point was that Brett Longton was an owner of the vehicle who committed an illegal act. The second point being that Glenn Croner, the co-signer and grandfather, should have known that Brett might drive the car. Is it should have known? What's the standard? It is should have known. It's knew or should have known. That is the language outlined repeatedly in the case precedence. That is the language that was applied by the trial court, and there certainly doesn't seem to be any evidence to suggest that it should be otherwise. Now, as to the first point, Brett Longton was clearly an owner of this vehicle. That doesn't – I don't think that's in dispute, is it? No, that does not seem to be in dispute. And specifically, as an owner of the vehicle, he had knowledge and consent to the illegal act, something that the state argued repeatedly in the trial court. And the illegal act in this case is important, because unlike in the case of 91 Chevy Camaro, where there was a vehicle owned by a father and son, in which the son took the vehicle and committed a burglary with it, the illegal act here is simply driving the car. He's driving while his license is suspended. So we have to ask then, is the co-signer, Glenn Croner, did he know or should he have known that Brett might drive the car? And might drive, did drive. Correct. And the evidence is there. They co-signed on this vehicle. Brett was making payments to the repairs, as Justice Hudson pointed out. He was the only insured person on the vehicle. Mr. Croner conceded that he had been driving Brett to and from work every day for three years because Brett was suspended during this time. And that evidence is important because, as he stated in cross-examination, during the two weeks that he was at the hospital with his wife, he stated he simply didn't know how Brett was getting to and from work. He acknowledged that he knew Brett was on call. He acknowledged that he knew that he could be called in for, I believe he was working IT for RR Donnelly, and that he might get called in at any time. And he simply buried his head in the sand, so to speak. So he was driving him to work before his grandmother went in the hospital. Was it the claimant? It was the claimant. And he was driving him back and forth all the time. Yes. He specifically testified that he had been driving him to work for three years. Then all of a sudden he's at the hospital with his wife, and a couple weeks go by and he doesn't have any reason to believe he's driving the car. That's the claimant's argument, right? Yes. But certainly you have to take, I believe counsel stated that we have to take the record that we have. And the record that we have shows that Mr. Kroner should have known that Brett would drive the car. Because he had to get to work and there was no way to take him. Correct. But he was on vacation, wasn't he? This was an on-call, maybe he gets called, maybe he doesn't. He was on vacation, he was on call, but Mr. Kroner testified that he knew they had, I believe it was a two-week on-call system, that as an IT worker he would get called in. The record doesn't necessarily speak to hours. It doesn't. But he could get called in. So all you have is the possibility that he could get called in. Yes. Not a probability, nothing. Just it was during that two-week period when he was on vacation, he was on on-call status. That's it, right? Yes. Okay. But when you put that together with the evidence that at the time Brett was suspended, they went to the dealership, they purchased a car, they titled Brett's name on that car, they titled Brett's name on the loan paperwork, Brett paid for repairs to the car, and Brett was the only insured person on the policy at the time. The policy is not in the record. Allow me to correct that. I apologize. He was the only name on the insurance card at the time the vehicle was stopped. However, opposing counsel, and I asked her about that, and I thought that was a legitimate point, took the position, well, yeah, but he thought he was going to get his license within a very short period of time. That's why he did all these things with insurance and title. So what's your response to that? My response to that is the record doesn't suggest that he had any appointment to get his license back. The record doesn't suggest that he was taking any affirmative steps to get his license back. The record merely gives this offhanded indication that he could get his license back a month from the time of the purchase. And a month from the time of the purchase. Wait a minute. So you're saying because the state didn't cross-examine him on that point but simply accepted it as true, he's getting his license back in a month or so, that we should read into the record that what's not there? I'm saying the information contained in the record doesn't suggest anything other than the mere fact that Brett did not have a license. And that his grandfather, whose eyes we look at this through, believed he was getting his license back in a month or so. Certainly, there was the testimony that he believed he was getting his license back in a month or so at the time of the purchase. That stood unchallenged. That did. However, I believe the record just simply doesn't support it. There's this constant theme throughout the claimant's argument that he just simply avoided what was happening at the time, that he simply didn't know how Brett might be getting around while he was in the hospital. He didn't know if Brett had actually got his license back. He essentially buries his head in the sand and tries to use that as a basis for claiming that he's an innocent known. When the facts and the evidence on the record supports that he should have known Brett would drive that car. He should have known that Brett did not get his license back at the time that he began going to the hospital. Well, if the evidence is that Brett never drove the car before December 27th, we're only talking about seven or eight days here, why would I believe that for the past three years Brett hadn't driven any car? Because that's what the evidence is. Believe it or not, that's what the evidence is, and it's uncontroverted, that all of a sudden Glenn or the grandfather would assume that over these seven days, all of a sudden Brett is now going to take the car and drive it. Where's that inference? Again, because the insurance was from November to January, the title was from November to January, all of those other things were in that prior six weeks where there was no driving based on this record, skinny as it is. Well, the insurance, I think, is the important point in that. Okay. The grandfather testified that he drove the car. The grandfather testified that the other family members drove the car, and yet the insurance card found in the vehicle only names Brett on the policy. Now, there is no evidence as to the policy, but taking the insurance card as it was found, Brett is the driver in this vehicle. Don't we insure cars, not people? We do insure cars. So the Mercedes was insured? The Mercedes was insured. Because certainly if Mr. Kroner's name is on the title, which it was, both Brett and Glenn's names were on there. Mr. Kroner's name was on the loan information. Both Brett and Glenn's names were on there. Whose name was first? I believe that in the ñ I'm not sure whose name was first specifically on the title, but Mr. Kroner testified specifically that he was a cosigner in the vehicle. Right. And that is what the record reflects. Now, Mr. Kroner says that he was also paying for this vehicle, says that he was also driving this vehicle, but his name's not on the insurance card. But the vehicle was insured. And isn't that what Illinois requires, that the vehicle is insured? I can have Mickey Mouse on my insurance card as long as my car is insured. The vehicle was insured, and that is what Illinois requires. But as Justice Hudson said, it can act as a red herring in the argument because it's not about whether or not the vehicle was insured. It's about the fact that they titled this vehicle, insured this vehicle, and Brett paid for this vehicle. And then he's going to claim that despite the fact that Brett is doing all of these things, that he didn't know he was going to drive it. Let me ask you another question. Until he got his license back. That's his testimony. And I believe the trial court made a ruling on that fact, and I believe that that's what this comes down to, is the trial court's determination that he simply did not believe Mr. Cronin's testimony that Brett wouldn't drive the car. He didn't say that. He didn't say, I don't find him credible. He just says, looking at the circumstances, the totality of the circumstances, correct? He did say looking at the totality of the circumstances. I would argue that that is a credibility determination in his ruling. You alluded to the case, People v. 1991 Chevy Camaro. You're familiar with the case? Yes. The claimant was listed on the vehicle's title along with his son, who used the vehicle in connection with the burglary. But in that case, the court allowed the claimant to assert a claim he was the innocent owner, holding that any person whose right, title, and interest is of record may show by a preconderance of the evidence that he did not know or have reason to know that the vehicle was to be used in the commission of an offense. May show by a preconderance of the evidence. So who has the burden of showing that they're the innocent owner? I believe the claimant would have the burden of showing that they're the innocent owner. And I believe that that's a very specific distinction between this case and that. Because certainly in that case, it was justified that the claimant didn't know the son would use the car for a burglary. But this is a very different thing. Exactly. He's just driving the car. So the claimant has a burden then under this innocent owner exception? Yes. I believe the claimant has the burden of showing that they were an innocent owner after the state has shown, of course, that the vehicle was subject to forfeiture. Okay. But you say, and this is a point that counsel made, reason to know, which is the statutory language, is different than should have known. Now, doesn't reason to know mean that it has happened in the past or this illegal conduct has occurred? Well, yeah, it did occur back in 2004 or whatever that was when he lost his license. But 12 years have passed. What's the reason to believe today or December 27th that he was going to drive that car? I believe that reason to know is a case-by-case decision that would have to be determined. So it doesn't have to be in a specific date? I suppose that would depend on the facts and circumstances of the case. But what we're dealing with here is should he have known, should have known. And the judge made a determination, the trial judge, on the totality of the circumstances that he should have known. And the judge says that not only in his ruling on the motion to reconsider, but specifically at the hearing when the claimant's counsel asked for a clarification on the ruling. The judge specifically states he found that on the totality of the circumstances, Mr. Cronin should have known that Brett would drive the car. So the map is a conclusion clearly apparent then? I believe that the determination made on the facts and circumstances of the case was the correct one. And I believe that under the standard, beyond the manifest weight of the evidence, we simply don't have that here. The trial court heard the testimony. The trial court made determinations of the credibility, made determinations of the witnesses. And as the trial court stated, on the totality of the circumstances, found that the grandfather should have known. So for us to reverse, we have to find an opposite conclusion to the one reached by the trial court. It's clearly apparent, right? Yes. And it was standard on the manifest weight. Yes. Okay. And certainly the trial court is in the best position to evaluate the testimony at the time that it's heard. And based on all of that, I believe the trial court made the correct determination. If you have no more questions, we would just ask. I do. Does discretion have a role here? Discretion has a role in that once an innocent owner claim is made, there is no mandatory requirement that the vehicle be returned. The trial court is allowed to operate its discretion to decide if the vehicle should be returned. So the state shows that there's a forfeiture, so I understand. State shows there's a forfeiture. Burden shifts to owner. And then if owner establishes that he or she is an innocent owner, the court can then step back and say, even if you're an innocent owner, I'm still going to forfeit the car? My understanding of the case law, specifically the 1998 GMC, stated that remission to an owner is not mandatory where a co-owner is found to be culpable, that the trial court can exercise discretion in making that determination. I believe that the trial court corrects. Aren't those always when there's, well, I take that back, never mind. I believe that the trial court correctly made that determination, and as the trial court stated and as Justice Hutchinson stated, it did that on the totality of the circumstances. I would argue that that was a commentary, perhaps, to the credibility of the witnesses. So bottom line, your position is that whatever Glenn or the grandfather testified to, basically Judge Dimond said, I don't really believe your perspective, your testimony. Therefore, your claim as an innocent owner fails. Is that your bottom line? That is the bottom line. Specifically, Judge Dimond does even acknowledge that he understands Mr. Krohnert has a strong interest, has a lot of money on the line, I believe was what he said. Sure, of course he does. But based on all of that, he made a determination that on the totality of the circumstances, he believed the car was properly forfeited. But doesn't every alleged innocent owner have some money on the line? I mean, if it's a car worth $100, fine, you can tow it away. But if it's, I mean, isn't that inherent bias always present in every contested forfeiture? Certainly, and I believe that's why Judge Dimond made the proper determination that although those things did in fact exist, on the facts, on the evidence, the car should be forfeited. Okay. Thank you. Thank you. Thank you, Mr. Contell. Ms. Moore. Thank you. There were a couple things that I wanted to address in terms of questions that were raised by the court. I think that Justice Jorgenson inquired as to who was first on the title. And in Supplemental Record 32 to 35, it is the registration and title documents that all show Mr. Conner as first appearing as the primary owner, the first named owner on the vehicle, to the extent that the court is interested in that. I think it is – there were some questions also raised, and I think, Justice Hutchinson, you had specifically cited Judge Dimond's – the language he used at the motion to reconsider. And I would encourage the court to go back and look at Judge Dimond's ruling initially on the day of the trial itself. And his ruling was – this is verbatim what he said. Mr. Conner, the law on forfeiture in the court's opinion is rather draconian. However, it is the law, and I have to follow it. While I empathize with you for having this kind of money at stake here, the fact of the matter is the state is correct. And this is the critical part. The Supreme Court has said the owner – one owner is enough in terms of knowledge, and obviously your grandson was an owner. He had knowledge when he took this car out. Under the circumstances, the state has met its burden, and I don't see any way around basically finding for the state that the vehicle is forfeitable under the circumstances they have met their burden. So at the initial hearing, Judge Dimond is relying on the idea of the knowledge of one owner is enough to render the vehicle forfeit. In doing so, what he has essentially done is rendered the entire innocent owner exception to forfeiture a nullity. And I believe that your job is to avoid an unjust or an absurd result, absurd result being the operative trial. One final question. Do we affirm the court on its decision, or do we affirm on its reasoning? We can affirm on any basis, even if the court reasoned wrongly, correct? Absolutely. You can affirm on any reasoning. I would submit to the court, again, going back to what the record says, what the record provides for your honors in terms of determining what the knowledge requirement is. And initially, in my initial arguments, I talked about the words that we use. And I think it is very interesting to note that the statutory language is different than what we have seen in a number of opinions from the appellate courts. That's because sometimes there's a confusion with the drug forfeiture in this, and this is not a drug forfeiture case. Correct. The standards are a little different. The Supreme Court in one 1998 GMC of the 2011 decision from the Supreme Court, that was dealing with the need for a pre-deprivation hearing. But there is some interesting language, and we did cite it in our brief, where they talk about the statutory scheme and they talk about the discretionary component to forfeiture. It's at Head Note 16. They talk about the statute provides for discretionary return of the vehicle in cases, and then it quotes the statute, where forfeiture was incurred without willful negligence or without any intention on the part of the owner of the vehicle or any person whose right title or interest is of record. And they go on again in Head Note 17 to address that specific language. When they're talking about the language, he did not know or have reason to know. And what the court says, the statute makes return discretionary with the court, and then in parentheses, actually strike that. When you go down to Head Note 18, it talks again about provision makes clear that the attorney general, when affording remission, and granted if he finds the existence of mitigating circumstances to justify remission of the forfeiture, and then the language that the Supreme Court uses, including that the owner or interested person incurred the forfeiture innocently without any willful negligence or any intention to violate the law. So it comes down to what's Mr. Cronert's state of mind. And as I think Justice Jorgensen, as you pointed out, we have to view this through his eyes. And the record that you have before you in Mr. Cronert's view is that this car was purchased at a time when it was expected his grandson would be getting his license back after an extended period of not having a license. And during that extended period of time, the grandson was compliant with the requirement that he not drive. So much so, in fact, that he got a job and was working at the same corporation where Grandpa worked. He was living with Grandpa. Grandpa was driving him to work every single day. If Mr. Cronert had gone to those lengths to assure that he was not driving the car, is it right to punish him or penalize him because his attention is diverted to his ailing wife in the hospital for a period of time and he's not concerned about the car? I mean, frankly, I think we would want to encourage people to be more concerned about the health and welfare of their family members than a property interest. But at the end of the day, he remains an innocent owner with no culpable knowledge. And you can dress it up however you want. Is it culpable knowledge or constructive knowledge? Well, it's constructive knowledge. Okay. Actual or constructive. And I would submit to the court that he had neither of those. And we can, you know, second guess and Monday morning quarterback all day long, should he have known? Should he have done more? Should he have called the kid every day and said, hey, did you call for an Uber? Did you call for a cab? Is your sister driving you to work? Are you getting called in today? He didn't do that. You know, and I don't think it's fair to Monday morning quarterback him at this point. The standard, the statute, the length of the statute I think has to control. Knew or had reason to know. There's nothing in this record that suggests he had reason to know. I just have one additional question. Explain to me, I asked counsel specifically where he felt discretion played a role. Where do you feel that discretion plays a role? Trial court's discretion. Well, I think the statutory scheme, when you look at it in totality, I'm talking about Section 36-2. It talks about the discretion of the state's attorney. It talks about the discretion of the attorney general when talking about remission and circumstances that might warrant remission. I think it is almost absurd to suggest that state actors would have discretion, but the court would not. The Supreme Court specifically references that it is a discretionary, it's within the discretion of the court. So, you know, we've got preponderance of the evidence on either side. The state has to show by a preponderance of the evidence that the vehicle is forfeitable. The innocent owner has to come in and show by a preponderance of the evidence that he is an innocent owner who didn't have a, who didn't have the knowledge required to invalidate his innocent owner defense. And then it comes down to what is the discretion of the court. Ultimately, the court does have discretion. But does the court have discretion? Does the innocent owner have to meet his or her burden before discretion becomes an issue? Absolutely. I believe that they do. And so your position is he met it here and that the court then did not exercise discretion. Now, is it your position that the trial court here did not appreciate that it had discretion, or is it that the trial court found that the innocent owner had not, that burden had not been met, therefore discretion was not even on the table? Well, I think at the time he made his ruling, I think the court suggested that he did not have discretion. And he said, well, the law is the law, and the knowledge of one owner is enough to merit the court to judge which court is wrong. And then at a later date, he kind of gave us this umbrella sort of, well, I find by totality of circumstances that the state met the burden and he should have known. And I don't think should have known is the standard. And that's what I'm asking this court to address. Thank you very much. Thank you very much. Counsel, thank you for your arguments. We will take the matter under advisement, render a decision in due course. We will now stand in recess to prepare for our next argument. Thank you.